**CROWN BEVERAGE CO., INC.,**
**Plaintiff-Appellant,**

v.

**CERVECERIA MOCTEZUMA, S.A., and**
**Moctezuma Imports, Inc.,**
**Defendants-Appellees.**

**No. 79–3357.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 8, 1981.

Decided Dec. 14, 1981.

Patricia Tenoso Sturdevant, Alioto & Alioto, San Francisco, Cal., for plaintiff-appellant.

William J. Meeske, Latham & Watkins, Los Angeles, Cal., argued, for defendants-appellees; Carl W. Witschy, Los Angeles, Cal., on brief.

Before BROWNING, Chief Judge, WRIGHT, Circuit Judge, and WEIGEL,* District Judge.

* Honorable Stanley A. Weigel, District Judge, United States District Court for the Northern District of California, sitting by designation.

PER CURIAM:

Cerveceria Moctezuma transferred the exclusive distributorship of its Mexican beers from Crown to Moctezuma Imports, a newly-formed subsidiary of Moctezuma. Crown alleges violations of sections 1 and 2 of the Sherman Act and breach of the distributorship contract. The district court granted summary judgment on the Sherman Act claims and dismissed the contract claim. We affirm.

■ Absent an anticompetitive intent or effect, a manufacturer may replace one exclusive distributor with another without violating § 1 of the Sherman Act, *A.H. Cox & Co. v. Star Machinery Co.*, 653 F.2d 1302, 1306 (9th Cir. 1981), even if the change is effected by integrating vertically. *Bushie v. Stenocord Corp.*, 460 F.2d 116 (9th Cir. 1972). Crown presented no substantial evidence that the replacement of Crown by Moctezuma Imports was intended to or did reduce competition.

■ Crown claims that Moctezuma's alleged breach of contract was sufficient evidence of anticompetitive intent to bar summary judgment, citing *DeVoto v. Pacific Fidelity Life Insurance Co.*, 516 F.2d 1 (9th Cir. 1975). The single fact that termination arguably breached the distributorship contract is not in itself sufficiently probative of anticompetitive intent to require denial of a motion for summary judgment. All of the circumstances surrounding the termination—the relationship of the parties, the egregiousness of the breach, the presence of other reasons for termination—affect the reasonableness of drawing an inference of anticompetitive intent. These circumstances made the inference plausible in *DeVoto*. Crown offers nothing to support an inference of anticompetitive intent except the arguable theory that the termination may have breached the contract. That alone is not enough to bar summary judgment. "In the absence of 'any significant probative evidence tending to support the complaint,' ... summary judgment [wa]s appropriate." *Ron Tonkin Gran Turismo v. Fiat Distributors*, 637 F.2d 1376, 1381 (9th Cir. 1981) (quoting *First National Bank of Arizona v.*

*Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)).

■ Similarly, Crown has presented no evidence from which a trier of fact might infer that defendants had specific intent to monopolize, an essential element of Crown's claim of attempted monopolization under § 2 of the Sherman Act. *William Inglis & Sons Baking Co., Inc. v. ITT Continental Baking Co.*, 652 F.2d 917, 931 (9th Cir. 1981); *Mutual Fund Investors, Inc. v. Putnam Management Co., Inc.*, 553 F.2d 620 at 627.

Crown's pendent contract claim was properly dismissed. The distributorship contract contained a forum selection clause providing that the parties subjected themselves to the jurisdiction of the courts of Mexico with respect to any dispute relating to the interpretation of the agreement. The dispute between the parties is whether the agreement provided one two-year option to extend the distributorship or an unlimited series of two-year options. This is a dispute about the interpretation of the contract within the coverage of the forum selection clause.

■ Forum selection clauses such as this are enforced unless the party resisting enforcement can "clearly show that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." *Republic International Corp. v. Amco Engineers, Inc.*, 516 F.2d 161, 168 (9th Cir. 1975) (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 3, 12, 15, 92 S.Ct. 1907, 1909, 1914, 1916, 32 L.Ed.2d 513).

■ Crown asserts the clause is unreasonable and unjust, but its argument comes to no more than a contention that it would be inconvenient for Crown to litigate in Mexico and that the Mexican courts might favor a local company over Crown. The inconvenience of litigating a dispute over a freely negotiated international contract in the country where one of the parties is located and is to perform is not sufficient to override the clause. *The Bremen* contem-

plated refusal to enforce a forum clause that chose "a remote forum to apply differing foreign law to an essentially American controversy," 407 U.S. at 16–17, 92 S.Ct. at 1916–17. The present case is more like the actual facts of *The Bremen*, however, than it is like the Court's hypothetical.

Crown's contention that Mexican courts would be unfair to it because it is a small American company is based solely on the opinion of Crown's president. *The Bremen* rejected this "provincial attitude regarding the fairness of other tribunals" as a reason for refusing to enforce a forum clause. Id. at 12, 92 S.Ct. at 1914. If the unfairness of foreign tribunals can ever be a basis for refusing to enforce such a clause, a much stronger showing than Crown has made is required.

Finally, Crown contends, citing *A. & E. Plastik Pak v. Monsanto Co.*, 396 F.2d 710, 716 (9th Cir. 1968), that the district court should have decided its contract claim because whether Moctezuma breached the contract is central to its antitrust claims. Because we have decided that Moctezuma was entitled to summary judgment on the antitrust claims regardless whether it had breached the contract, the contract issue is not "the crucial factual antitrust issue" with which *Plastic Pak* was concerned.

Affirmed.