**MANETTI–FARROW, INC., a California corporation, Plaintiff–Appellant,**

v.

**GUCCI AMERICA, INC., a New York corporation; Gucci Parfums S.p.A., an Italian corporation; Guccio Gucci S.p.A., an Italian corporation; Maurizio Gucci, Dr.; Domenico De Sole; Giovanni Vittorio Pilone, Dr., Defendants–Appellees.**

No. 87–1988.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 10, 1988.

Decided Sept. 28, 1988.

Richard D. Rosenberg, Alioto & Alioto, San Francisco, Cal., for plaintiff/appellant.

Edwin B. Mishkin, Cleary, Gottlieb, Steen & Hamilton, New York City, for defendant/appellee Gucci America.

Patrick J. Mahoney, Cooley, Godward, Castro, Huddleson & Tatum, San Francisco, Cal., for remaining defendants/appellees.

Before FARRIS, BRUNETTI and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Manetti–Farrow, Inc. ("Manetti–Farrow") appeals the dismissal of its complaint against Gucci Parfums, S.p.A. ("Gucci Parfums"), Gucci America, Inc. ("Gucci America"), Guccio Gucci, S.p.A. ("Guccio Gucci"), and three individual directors of the various Gucci enterprises.

Manetti–Farrow entered an exclusive dealership contract with Gucci Parfums. The contract included a forum selection clause which designated Florence, Italy as the forum for resolution of any controversy "regarding interpretation or fulfillment" of the contract. Manetti–Farrow contends the forum selection clause does not apply to tort claims, and that the district court has jurisdiction to hear these claims. The district court dismissed the complaint. It concluded that the parties' forum selection clause required them to litigate their dispute in Florence, Italy. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

I

FACTS

In 1906, Signor Guccio Gucci opened a saddlery in Florence, Italy that eventually gained world-wide acclaim for its quality leather craftsmanship. The parent corporation of the Gucci empire, Guccio Gucci, S.p.A. ("Guccio Gucci") expanded its market to the United States in the 1950s. As the Gucci reputation spread, Gucci America was incorporated in New York to distribute

Gucci products throughout the United States. Gucci America owns the American rights to the Gucci trademark, and owns and licenses retail stores across the country specializing in sales of Gucci merchandise.

Guccio Gucci formed a subsidiary, Gucci Parfums, to market a new line of perfumes and accessory items. Gucci Parfums is incorporated in Florence, Italy, and is 80%–owned by Guccio Gucci. The Gucci Accessory Collection ("Collection") launched by Gucci Parfums includes handbags, cosmetic bags, wallets, key rings and pens, all bearing the distinctive red and green Gucci stripe. Gucci Parfums sells the Collection to distributors around the world.

Manetti–Farrow, a California corporation, entered an exclusive dealership contract with Gucci Parfums in 1979. The contract designated Manetti–Farrow as the exclusive U.S. distributor of the Collection. Gucci America, the owner of the American rights to the Gucci trademark, was not a party to the exclusive dealership contract, but entered a separate Consent and Ratification Agreement, consenting to the terms of the contract.

In 1983, in Florence, Manetti–Farrow renewed its exclusive dealership contract with Gucci Parfums for an additional five years on substantially the same terms as the 1979 agreement. Due to Manetti–Farrow's success in marketing the Collection, its dealership territory was extended to include Puerto Rico, the Virgin Islands, and Tahiti. The 1979 and 1983 contracts included identical forum selection clauses, which provided: "For any controversy regarding interpretation or fulfillment of the present contract, the Court of Florence has sole jurisdiction." Gucci America signed a second Consent and Ratification Agreement, consenting to the 1983 contract between Manetti–Farrow and Gucci Parfums.

Sales of the Collection merchandise boomed. Manetti–Farrow's wholesale purchases from Gucci Parfums increased from $480,000 in 1979 to $15 million in 1985. The Manetti–Farrow distribution network expanded to over 500 points of sale. In 1985, Gucci Parfums signed a written agreement waiving its right to withdraw from the exclusive dealership contract in 1988, and extending Manetti–Farrow's contract for another five years.

Meanwhile, a power struggle was taking place within the Gucci empire. Manetti–Farrow alleges certain factions of the Gucci family sought to terminate its exclusive dealership relationship with Gucci Parfums, and to bring North American distribution of the Collection within the Gucci corporate structure. In July, 1986, Gucci Parfums terminated the exclusive dealership agreement, and brought suit against Manetti–Farrow in Florence for breach of contract.

One month later, Manetti–Farrow brought suit in the United States District Court for the Northern District of California, alleging eight causes of action against: Guccio Gucci; Gucci America; Gucci Parfums; Dr. Maurizio Gucci (Chairman of the Board of Gucci America, and director of Gucci Parfums and Guccio Gucci); Domenico De Sole (President and Director of Gucci America); and Dr. Giovanni Pilone (President of Gucci Parfums and director of Gucci America and Guccio Gucci). Six of these causes of action are at issue in this appeal: [1] (1) conspiracy to interfere with contractual relations (against all defendants); (2) conspiracy to interfere with prospective economic advantage (against all defendants); (3) tortious interference with contractual relations (against Gucci America, Dr. Gucci, and De Sole); (4) tortious interference with prospective economic advantage (against Gucci America, Dr. Gucci, and De Sole); (5) breach of implied covenant of good faith and fair dealing (against Gucci America); and (6) unfair trade practices (against Gucci America). The district court held that all of these claims were covered by the forum selection clause, and

---

1. Manetti–Farrow concedes its seventh and eighth causes of action (for breach of an implied covenant of good faith and fair dealing, and trade indebtedness) involve interpretation or fulfillment of the contract, and were properly dismissed because these causes of action are admittedly covered by the forum selection clause.

dismissed the case. Manetti–Farrow appeals.

## II

## APPLICABLE LAW

■ Our initial task is to decide whether state or federal law applies in our analysis of the effect and scope of the forum selection clause. Our approach to this threshold question is dictated by the doctrine of *Erie Railroad v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and its progeny. The Supreme Court has explained that in diversity suits such as the case before us, federal district courts should apply state law to substantive issues, and federal law to procedural issues. The application of the *Erie* doctrine to forum selection clauses, however, has led to a split among the circuit courts of appeals as to whether state or federal law should be applied.[2] In this circuit, the issue has been squarely addressed only once. In *Visicorp v. Software Arts, Inc.,* 575 F.Supp. 1528 (N.D.Cal.1983), the district court decided that federal law applies to interpret a forum selection clause, because forum selection is primarily a venue matter. *Id.* at 1532. The *Visicorp* court applied the standard announced in *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). In *The Bremen,* the Supreme Court stated that forum selection clauses are to be specifically enforced unless the party opposing the clause clearly shows "that enforcement would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." *The Bremen,* 407 U.S. at 15, 92 S.Ct. at 1916. Although *The Bremen* was an admiralty case, its standard has been widely applied to forum selection clauses in

general. *See e.g., Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 518–19, 94 S.Ct. 2449, 2456–57, 41 L.Ed.2d 270 (1974) (applying *The Bremen* standard to an agreement to arbitrate disputes).

Other Ninth Circuit opinions interpreting forum selection clauses have applied federal law without discussing whether state or federal law applies. *See, e.g., Pelleport Investors v. Budco Quality Theaters,* 741 F.2d 273, 279 (9th Cir.1984); *Crown Beverage Co. v. Cerveceria Moctezuma, S.A.,* 663 F.2d 886, 888 (9th Cir.1981); *Republic Int'l Corp. v. Amco Eng'rs, Inc.,* 516 F.2d 161, 168 (9th Cir.1975). *But see Colonial Leasing Co. v. Pugh Bros. Garage,* 735 F.2d 380, 382 (9th Cir.1984) (applying Oregon law to enforce a forum selection clause). Other circuit courts of appeals have reached conflicting results. The Third Circuit treats interpretation of forum selection clauses as a contract issue, to be resolved according to state law. *General Eng'g Corp. v. Martin Marietta Alumina, Inc.,* 783 F.2d 352, 356–57 (3d Cir.1986); *see also Snider v. Lone Star Art Trading Co., Inc.,* 672 F.Supp. 977, 982 (E.D.Mich.1987), *aff'd,* 838 F.2d 1215 (6th Cir.1988). The Eleventh Circuit holds that forum selection clauses involve venue issues, are procedural and therefore federal law applies. *Stewart Org., Inc. v. Ricoh Corp.,* 810 F.2d 1066, 1068 (11th Cir.) (per curiam) (en banc), *aff'd on other grounds,* ——— U.S. ———, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988); *accord Karl Koch Erecting Co. v. New York Convention Center Dev. Corp.,* 838 F.2d 656, 659 (2d Cir.1988); *Luce v. Edelstein,* 802 F.2d 49, 57 (2d Cir.1986); *Bryant Elec. Co. v. City of Fredericksburg,* 762 F.2d 1192, 1196–97 (4th Cir.1985); *Bense v. Interstate Battery Sys. of Amer-*

---

**2.** We note that the Supreme Court's decision in *Stewart Organization, Inc. v. Ricoh Corp.,* ——— U.S. ———, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) does not fully resolve this problem. In *Stewart,* the Court decided that federal law applies to a motion to transfer venue under 28 U.S.C. § 1404(a) when venue is designated in a contractual forum selection clause. *Id.* at ———, 108 S.Ct. at 2245–50. The Court stated that because there was a federal statute, 28 U.S.C. § 1404(a), directly on point, the district court was required to apply federal law. *Id.* at ———, 108 S.Ct. at

2241. Our case involves a motion to dismiss, rather than to transfer venue, and because there is no federal rule directly on point the *Stewart* analysis is inapplicable. The Eleventh Circuit's en banc decision in *Stewart,* however, is helpful because it explains why federal law applies as a general principle to enforce forum clauses, without addressing the application of § 1404(a). *See Stewart Organization, Inc. v. Ricoh Corp.,* 810 F.2d 1066 (11th Cir.) (per curiam) (en banc), *aff'd on other grounds,* ——— U.S. ———, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988).

*ica, Inc.,* 683 F.2d 718 (2d Cir.1982); *Freidman v. World Transp., Inc.,* 636 F.Supp. 685, 689 (N.D.Ill.1986).[3]

In making an *Erie* choice between applying federal or state law, *Hanna v. Plumer,* 380 U.S. 460, 471, 85 S.Ct. 1136, 1144, 14 L.Ed.2d 8 (1965) teaches that our decision must be guided by "the twin aims of the *Erie* rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Id.* at 468, 85 S.Ct. at 1142. The *Erie* choice is best accomplished by balancing the federal and state interests. *See, e.g., Byrd v. Blue Ridge Rural Elec. Coop.,* 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958) (balancing state and federal interests to uphold the federal practice of trial by jury in federal courts sitting in diversity); *see also* 19 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4511 (1982). In the present case, the federal interests outweigh the state interests for reasons which the Eleventh Circuit has explained:

> First, Congress has specifically provided, by statutory enactment, rules of venue to govern federal district courts in diversity actions. [28 U.S.C. §§ 1391–1412]. By providing specific provisions rather than allowing rules of venue to be governed by state common law, the statute makes clear that Congress considered this a question appropriately governed by federal legal standards. Second, Congress has approved the adoption of Fed.R.Civ.P. 12(b)(3) and 41(b), federal procedural rules that direct federal courts as to the principles involved in deciding questions of venue. As the panel stated in reflection on these rules:
>
> > If venue were to be governed by the law of the state in which the forum court sat, the federal venue statute

would be nugatory. Nor would there be any legitimacy to the Federal Rules that govern certain aspects of venue, for they would tread on state prerogatives. *Hanna* clearly rejected this notion.

*Stewart Org., Inc. v. Ricoh Corp.,* 810 F.2d 1066, 1068 (11th Cir.) (per curiam) (en banc), *aff'd on other grounds,* — U.S. —, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988) (emphasis deleted).

We conclude that the federal procedural issues raised by forum selection clauses significantly outweigh the state interests, and the federal rule announced in *The Bremen* controls enforcement of forum clauses in diversity cases. *See Stewart,* — U.S. at —, 108 S.Ct. at 2250 (Kennedy, J., concurring) ("Though state policies should be weighed in the balance, the authority and prerogative of the federal courts to determine the issue ... should be exercised so that a valid forum selection clause is given controlling weight in all but the most exceptional cases."). Moreover, because enforcement of a forum clause necessarily entails interpretation of the clause before it can be enforced, federal law also applies to interpretation of forum selection clauses.

## III

## SCOPE OF THE FORUM SELECTION CLAUSE

### A. *Tort Claims*

■ Applying federal law to the forum selection clause involved in the present case, we turn to Manetti–Farrow's contention that the scope of the clause does not cover the tort claims asserted in the complaint. The forum selection clause pro-

---

**3.** Two panels of the Eighth Circuit have reached inconsistent results in determining whether state or federal law applies to forum selection clauses. In *Sun World Lines, Ltd. v. March Shipping Corp.,* 801 F.2d 1066 (8th Cir.1986), one panel of the Eighth Circuit concluded in dicta that forum selection clauses involve venue issues and are therefore procedural clauses governed by federal law. *Id.* at 1068–69. Shortly thereafter, another panel of the Eighth Circuit distinguished *Sun World,* explaining that it involved admiralty law, to which federal common

law always applies. *Farmland Indus., Inc. v. Frazier–Parrott Commodities, Inc.,* 806 F.2d 848, 852 (8th Cir.1986). The *Farmland* court observed that "[w]hether a contractual forum clause is substantive or procedural is a difficult question. On the one hand the clause determines venue and can be considered procedural, but on the other, choice of forum is an important contractual right of the parties." *Id.* On balance, the *Farmland* court opted to apply state law to the forum clause, following the Third Circuit's *General Engineering* decision. *Id.*

vides that Florence shall be the forum for resolving disputes regarding "interpretation" or "fulfillment" of the contract. Manetti–Farrow maintains its causes of action do not relate to "interpretation" or "fulfillment" of the contract, but are "pure" tort claims independent of the contract.

■ We first note that forum selection clauses can be equally applicable to contractual and tort causes of action. *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 203 (3d Cir.), *cert. denied*, 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed. 2d 315 (1983); *Weidner Communications, Inc. v. Faisal*, 671 F.Supp. 531, 537 (N.D. Ill.1987); *Clinton v. Janger*, 583 F.Supp. 284, 287–88 (N.D.Ill.1984). Whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract. *Weidner Communications*, 671 F.Supp. at 537; *Berrett v. Life Ins. Co.*, 623 F.Supp. 946, 948–49 (D. Utah 1985); *Clinton*, 583 F.Supp. at 288. We must, therefore, determine if Manetti–Farrow's claims require interpretation of the contract. *See Mediterranean Enter., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1463 (9th Cir.1983).[4]

Manetti–Farrow's complaint alleges that Gucci Parfums instituted a price squeeze by raising prices substantially above what it charged other customers, that Gucci America fraudulently obtained Manetti–Farrow's customer lists and business information to solicit Manetti–Farrow's customers, that Gucci Parfums wrongfully neglected delivery orders, and that Gucci Parfums wrongfully abrogated the contract. Each of these claims relates in some way to rights and duties enumerated in the exclusive dealership contract. The claims cannot be adjudicated without analyzing whether the parties were in compliance with the contract.[5] Therefore, because the tort causes of action alleged by Manetti–Farrow relate to "the central conflict over the interpretation" of the contract, they are within the scope of the forum selection clause.

### B. *Parol Evidence*

Manetti–Farrow sought to introduce parol evidence to show that it did not intend the forum selection clause to apply to tort claims. Traditional contract law provides that extrinsic evidence is inadmissible to interpret an unambiguous contract. *Trident Center v. Connecticut Gen. Life Ins. Co.*, 847 F.2d 564, 568 (9th Cir.1988); *Henein v. Saudi Arabian Parsons, Ltd.*, 818 F.2d 1508, 1514 (9th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 707, 98 L.Ed.2d 657 (1988); *Telco Leasing, Inc. v. Transwestern Title Co.*, 630 F.2d 691, 693 (9th Cir.1980). As the district court concluded, the plain meaning of the clause is that Manetti–Farrow's claims fall within the scope of the forum selection clause. Manetti–Farrow's proffered extrinsic evidence was properly excluded.

### IV

### ENFORCEMENT OF THE FORUM SELECTION CLAUSE

■ Forum selection clauses are *prima facie* valid, and are enforceable absent a strong showing by the party opposing the clause "that enforcement would be unreasonable or unjust, or that the clause [is] invalid for such reasons as fraud or overreaching." *The Bremen*, 407 U.S. at 15, 92 S.Ct. at 1916; *see also Pelleport Investors*, 741 F.2d at 279; *Crown Beverage*, 663 F.2d

---

4. Although *Mediterranean* involved interpretation of the scope of an arbitration clause, we apply its analysis here because an agreement to arbitrate is actually a specialized forum selection clause. *See Scherk*, 417 U.S. at 519, 94 S.Ct. at 2457.

5. Manetti–Farrow argues the forum selection clause can only apply to Gucci Parfums, which was the only defendant to sign the contract. However, "a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses." *Clinton v. Janger*, 583 F.Supp. 284, 290 (N.D.Ill.1984) (citing *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 202–03 (3d Cir.), *cert. denied*, 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983)). We agree with the district court that the alleged conduct of the non-parties is so closely related to the contractual relationship that the forum selection clause applies to all defendants.

at 888; *Republic Int'l,* 516 F.2d at 168. The opposing party has the burden "to show that trial in the contractual forum would be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *The Bremen,* 407 U.S. at 18, 92 S.Ct. at 1917.

 Manetti–Farrow contends enforcement of the clause would be unreasonable because it cannot be assured that an Italian court will adequately safeguard its rights against all the defendants. This concern is not only speculative, it "reflects something of a provincial attitude regarding the fairness of [an Italian] tribunal[ ]." *The Bremen,* 407 U.S. at 12, 92 S.Ct. at 1914. Moreover, it is a concern which the parties presumably thought about and resolved when they included the forum selection clause in their contract. Manetti–Farrow now wants to change the bargain. To permit it to do so would completely contradict the policy of enforcing forum selection clauses.

Manetti–Farrow also contends that because the alleged wrongful acts were committed principally in the United States, and the harmful effects of these acts were suffered by Manetti–Farrow in California, it should be permitted to prosecute its claims in the district court in California. This argument overlooks several important facts. The complaint centers on a dispute over a contract executed in Italy with an Italian corporation. The contract involves the distribution of Italian goods. And most important, the contract contains a forum selection clause which designates Florence, Italy as the place for the resolution of the disputes in this case.

We conclude that the district court did not err in enforcing the forum selection clause by dismissing Manetti–Farrow's complaint.

AFFIRMED.