### Guenter PAULY and Jose Pena, Plaintiffs,

v.

### BIOTRONIK, GmbH, a German corporation; Micro Systems Engineering, Inc., an Oregon corporation; and Dr. Max Schaldach, Defendants.

### Civ. No. 90–100–RE.

United States District Court, D. Oregon.

May 24, 1990.

H. Paul Montgomery, Acker, Underwood, Norwood & Hiefield, Portland, Or., for plaintiffs.

Sean Donahue, Davis Wright Tremaine, Portland, Or., for defendants.

## OPINION

REDDEN, Judge:

### BACKGROUND

Plaintiffs Pauly and Pena filed a complaint for breach of contract, fraud and declaratory judgment. The breach of contract claim involves oral and written promises allegedly made by defendants to the effect that if plaintiffs would move to Oregon and start up a company (Micro Systems Engineering—"MSE") to design, develop and fabricate hybrid circuits for pace makers to be sold by MSE to MSE's parent company, defendant Biotronik, plaintiffs would have an ownership interest in MSE; they would be paid a percentage of participation in the sales of MSE; and they would be employed by the corporation for an indefinite period, but for no less than five years and termination would have to be "for cause."

Plaintiffs' fraud claim is against all defendants because defendant Schaldach (principle owner, president and operating officer for Biotronik and MSE) allegedly made these promises to plaintiff with the specific fraudulent intent of inducing plain-

tiffs to form the company and then, once formed, terminating them.

Plaintiffs' third claim for relief (declaratory judgment) is based on a paragraph in the Employment Agreement whereby plaintiffs allegedly agreed not to compete with MSE for two years following their termination. MSE has allegedly advised plaintiffs it intends to enforce that paragraph.

DISCUSSION

Defendants Schaldach and Biotronik move to dismiss for lack of subject matter jurisdiction. Defendants' motion is based on the October 1988 contract's forum selection and arbitration clause between plaintiffs and Biotronik which establishes jurisdiction over controversies between these parties in the courts of West Berlin and before the International Chamber of Commerce. The issue before the court is whether this clause is enforceable. I find that it is. Defendants state that before plaintiffs' complaint was filed, defendants filed an action for declaratory relief against plaintiffs in West Berlin and in the International Chamber of Commerce in Paris, in compliance with the Agreement's forum selection and arbitration clause. Plaintiffs have appeared before both the West Berlin court and the International Chamber of Commerce.

The clause states:

German law is to be applied to this contract. Place of performance is Berlin (West). Jurisdiction shall be Berlin (West). The parties agree also that controversies in connection with this contract shall be settled by a court of arbitration of the International Chamber of Commerce Paris/France. The proceedings of the court of arbitration shall take place in Bern/Switzerland. German substantive and procedural law is to be applied for the proceedings of the court of arbitration. The decree of the court of arbitration is binding and final.

The Court in *M/S Bremen v. Zapata Offshore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), enforced a forum selection clause in an international contract between an American and German corporation. The contract contained a forum selec-

tion clause requiring any dispute between the parties to be filed before the London Court of Justice. However, the American company sued the German corporation in the United States. The Court enforced the clause even after finding that the English court could enforce an exculpatory contractual provision an American court would not enforce. The Court held that:

In the light of present day commercial realities and expanding international trade we conclude that the forum selection clause should control absent a strong showing that it should be set aside.

*Id.* at 15, 92 S.Ct. at 1916.

*See also, Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974) (a forum selection and arbitration clause was enforced even though the law of the selected forum was contrary to that of the United States). The contract in *Scherk* required arbitration before the International Chamber of Commerce in Paris, but plaintiff filed an action in the United States. The Court held:

A contractual provision specifying in advance the forum in which disputes shall be litigated and the law to be applied is, therefore, an almost indispensable and precondition to achievement of the orderliness and predictability essential to any international business transaction. Furthermore, such a provision obviates the danger that a dispute under the agreement might be submitted to a forum hostile to the interests of one of the parties or unfamiliar with the problem area involved. A parochial refusal by the courts of one country to enforce an international arbitration agreement would not only frustrate these purposes but would invite unseemly and mutually destructive jockeying by the parties to secure tactical litigation advantages.

*Id.* at 516–17, 94 S.Ct. at 2455–56.

The strong federal policy in favor of arbitration was recognized in *Mitsubishi Motors v. Soler Chrysler–Plymouth*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). That Court held that even claims arising under the Sherman Act could be

arbitrated under a contract requiring arbitration of all disputes in Japan.

■ I am required to enforce the arbitration clause unless grounds exist for the revocation of the Biotronik Agreement. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (agreements to arbitrate controversies arising out of an exiting contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract").

■ Even if plaintiffs did not read or understand the Biotronik Agreement, the issue of arbitrability under the Agreement is a question to be decided by the court. *See AT & T Technologies, Inc. v. Communication Workers of America*, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agree to arbitrate is to be decided by the court, not the arbitrator). The Supreme Court has held that even if plaintiffs were fraudulently induced to sign the Agreement, this claim must be arbitrated. *See Prima Paint Corp. v. Flood & Conklin Manufacturing Co.*, 388 U.S. 395, 403, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967) (a claim of fraud in the inducement of a contract containing an arbitration clause is an issue that must be arbitrated).

Pauly went to Germany to meet with Schaldach and signed the Agreement. Pauly then returned to the U.S. and translated the agreement for Pena. Plaintiffs allege that Pauly did not focus or explain the forum selection clause because he did not understand the purpose or effect of such a clause. Plaintiffs allege that enforcing the forum selection clause would be unfair and unreasonable because there was no bargaining on the clause and it was presented on a "take-it-or-leave-it" basis.

Defendants allege that the negotiations between the parties led to the preparation of a letter of intent written in longhand by Pauly in the German language. Defendants say that the letter of intent was not intended by the parties to be a contract, pointing out that it specifically states that a formal contract, outlining the terms of the Biotronik Agreement, would be prepared. Defendants allege that the forum selection and arbitration clause were negotiated with plaintiffs, and that the parties agreed (in the October 1986 Agreement) that a arbitration clause was desirable because dispute resolution in Europe was expected to be quicker, cheaper and more certain than litigation in the U.S. An affidavit by Scott Shanks (MSE vice president), states that it was Pauly's idea to include an arbitration clause in his October 1986 employment agreement. Shanks states that Pauly "convinced Prof. Dr. Schaldach and I that arbitrations were quicker and cheaper than litigation." Shanks participated with Schaldach in negotiating Pauly's employment contract with MSE. Shanks states that "all of the terms of Pauly's contract with MSE were negotiated with Pauly, including the AAA arbitration clause contained in this [October 1986 employment] agreement."

Defendants also argue that the forum selection clause was negotiated for. Schaldach's affidavit states that "the parties to the [Agreement] agreed that a forum selection and arbitration clause was desirable because any dispute resolution in Europe was expected to be quicker, cheaper and more certain. No one objected to the forum selection and arbitration clause in the [Agreement]." (Affidavit of Schaldach, para. 10, p. 4). *See also, Colonial Leasing Co. of New England v. McIlroy*, 94 Or. App. 273, 765 P.2d 219 (1988). In *McIlroy*, the court upheld the same forum selection clause "expressly held to be unfair or unreasonable in three previous actions and ... implicitly treated as unenforceable in another." *Id.* at 277. The *McIlroy* plaintiff (like plaintiff Pena here) signed a lease without reading it. The evidence in *McIlroy* was that defendant would have negotiated the forum selection clause (as Schaldach alleges here). Therefore, the court upheld the forum selection clause even though it was printed on a form contract in small print at the bottom of a page.

Further, defendants argue that plaintiffs have presented no evidence of any disparity

of bargaining power or evidence to dispute the fact that the forum selection clause was negotiable. Defendants dispute plaintiffs' characterization of their relationship with defendants. Defendants argue that the Biotronik Agreement is an international business transaction between the parties. Plaintiffs contracted with a German corporation to assist that corporation to produce custom hybrid microelectronic circuits for products manufactured by defendant Biotronik in Germany.

■ Pauly fails to suggest any "strong reasons" as to why the forum selection clause should be set aside. Pauly's affidavit does not suggest that litigation in Europe would "be so gravely difficult and inconvenient that [Pauly] for all practical purposes would be deprived of his day in court." *Bremen,* 407 U.S. at 18, 92 S.Ct. at 1917. Pena states only that litigation in Europe would be an "an extreme inconvenience" because he does not speak German. *See Manetti–Farrow, Inc. v. Gucci America, Inc.,* 858 F.2d 509 (9th Cir.1988) (upheld a forum selection clause that designated Italy in a breach of contract and fraud claim). *Manetti–Farrow* rejected both of plaintiff's arguments that it could not be assured that an Italian court would adequately safeguard its rights, and that the alleged damages were from wrongful acts committed principally in the U.S. The court held that plaintiff failed to show "that trial in the contractual forum would be so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court." *Id.* at 515. *See also, Karlberg European Tanspa v. J.K.—Josef Kratz Vertriebsgesellschaft,* 618 F.Supp. 344 (N.D.Ill.1985), the court upheld a forum selection clause that required litigation in West Germany. The court held that the facts that plaintiff's witnesses were in the U.S., the defective product was in the U.S., the documents were in English and that there were more limited discovery rules in Germany did not give rise to a level of unreasonableness that would deprive plaintiff of its day in court. Plaintiffs in *Karlberg* also claimed it signed the agreement without consulting counsel. The court found that unpersua-sive and held that "basic contract law establishes a duty to read the contract which the Karlbergs cannot escape." *Id.* at 347. *See also, Gaskin v. Stumm Handel Gmbh,* 390 F.Supp. 361, 365–67 (S.D.N.Y.1975) (duty to read upheld even when contract written in German, a language the party could not read or understand). The *Karlberg* court also noted that it was not a form contract but one that was negotiated between business people (as here), and that plaintiffs had negotiated earlier drafts of the contract (as plaintiffs did here when Pauly prepared the letter of intent). The court also noted that the forum selection clause in *Karlberg* was "clearly visible to its signers." *The same is true here.* The forum selection and arbitration clause is the final paragraph prior to the signature lines. That paragraph is printed in the same average sized type as the rest of the contract and the contract is only two pages long.

## CONCLUSION

I find that the Agreement provides for *both* arbitration and forum selection. It is well settled that federal courts favor arbitration and will give liberal construction to arbitration clauses in contracts. The arbitration clause should be enforced unless there is evidence to suggest that the Agreement should be revoked. Plaintiffs don't assert any grounds for revocation of the Agreement, nor do I find any. Therefore, the arbitration clause is enforceable.

I also hold that the forum selection clause is enforceable. Courts can use their discretion to decide whether enforcement would be "unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching." The law does not support plaintiffs' position that enforcement of the forum selection clause would be unreasonable and unjust. Plaintiffs do not offer evidence which supports a claim that litigation in Europe would "be so gravely difficult and inconvenient that [plaintiffs] will for all practical purposes be deprived of [their] day in court." The cases cited above discuss circumstances similar to plaintiffs where the courts uni-

**1336**

formly upheld the forum selection clauses finding that the "unreasonableness" offered by plaintiffs did not rise to the level of "gravely difficult and inconvenient" such that a party would be deprived of their day in court.

Defendants' Motion to Dismiss is GRANTED. This court does not have subject matter jurisdiction over the parties.