**TAAG LINHAS AEREAS de ANGOLA,**
**Plaintiff–Appellant,**

v.

**TRANSAMERICA AIRLINES, INC.,**
**Transamerica Corporation, H.K. Howard, William Maier, Joseph Murphy, Eric J. Korth, Defendants–Appellees.**

No. 88–15420.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 13, 1989.

Decided Oct. 3, 1990.

As Amended Dec. 27, 1990.

Thomas F. Doyle, San Francisco, Cal., for plaintiff-appellant.

Joseph P. Mascovich, Crosby, Heafey, Roach & May, Oakland, Cal., for defendant-appellee Transamerica Corp.

Morris J. Baller, Marron, Reid & Sheehy, San Francisco, Cal., for defendants-appellees Transamerica Airlines, Inc., H.K. Howard, William Maier, Joseph Murphy and Eric J. Korth.

Before CHAMBERS, POOLE and WIGGINS, Circuit Judges.

POOLE, Circuit Judge:

TAAG Linhas Aereas de Angola, a third-party beneficiary under an air-transport agreement, appeals from a grant of a motion to dismiss pursuant to a forum selection clause requiring actions arising out of the agreement to be brought in Switzerland. Claiming that defendants-appellees, Transamerica Airlines, Inc., its parent, Transamerica Corporation, and several of its officers, failed to pay commissions due under the agreement, TAAG brought suit in United States District Court. Defendants' motion to dismiss was granted on the ground that, because of the forum selection clause, the district court lacked jurisdiction to hear the dispute. TAAG argues that enforcement of the forum selection clause is unreasonable under the circumstances of this action.

## FACTS

TAAG is the national airline of Angola. In 1981 it merged with another airline, Consorcio Tecnico de Aeronautica (CTA), and assumed all of CTA's assets and liabilities, including its rights under a 1977 air-transport agreement between Compania de Diamantes de Angola (Diamantes), a privately-owned diamond-mining company, and Trans International Airlines, predecessor to Transamerica Airlines, Inc., a United States corporation with offices in Oakland, California.

The air-transport agreement provided that Diamantes would pay Transamerica Airlines for air-transport services at an hourly rate and reimburse Transamerica Airlines for certain costs incurred during performance of the agreement. In addition, the agreement provided that Transamerica Airlines was to pay CTA, on a monthly basis, a five-percent commission based on total hours flown. Article IV.4. Elsewhere in the agreement, there was some indication that the amount of this commission was intended to be paid by Diamantes to Transamerica Airlines as one of the reimbursable costs. Article XV. The agreement also contained a forum selection clause:

> This Agreement shall be construed in accordance with the laws of the Swiss Confederation and any action arising out of this Agreement or the execution or performance thereof shall be brought in the City of Berne in Switzerland. Alternatively the parties may agree that any differences regarding the implementation of this Agreement be submitted to arbitration by a single arbitrator to be appointed by the International Chamber of Commerce in Paris.

Article XVI.

TAAG now alleges that although Diamantes paid the five-percent commission to Transamerica Airlines, Transamerica failed to pay it to TAAG after TAAG assumed CTA's rights under the agreement in 1981. Instead, Transamerica Airlines carried the sum of the payments allegedly owed to TAAG (some $2.268 million accrued from 1981 to 1985, when the agreement terminated) as a liability on its books until about January 1986, when it changed the designation to income. Later, according to TAAG, the money was transferred to Transamerica Corporation, Transamerica Airline's parent company.

In December 1987, TAAG brought suit in United States District Court against Transamerica Airlines, several of its officers, and Transamerica Corporation. Alleging RICO violations, misrepresentation, breach of contract, conversion, and conspiracy,

TAAG sought contract damages, treble damages, punitive damages and the establishment of a constructive trust. Upon a motion by defendants, the court dismissed the action on the ground that, because of the forum selection clause in the agreement, TAAG could not bring its suit in federal court. TAAG timely appealed the district court's dismissal of its action.

In October 1988, after filing the notice of appeal, TAAG sought and obtained a limited remand to the district court for the purpose of making a Rule 60(b) motion. The motion was denied. TAAG did not file a notice of appeal from this denial.

On October 12, 1989, Transamerica filed in this court a motion to take judicial notice of the certified minutes of the Court of Commerce of the Canton of Berne, Switzerland. The minutes, attached as Exhibit A to the motion, with an English translation attached as Exhibit B, indicate that the Court of Commerce has "affirmed" its "competence" to hear TAAG's action and decided that "the action will be tried on its merits." We grant Transamerica's motion and take judicial notice pursuant to Federal Rule of Evidence 201.

## STANDARD OF REVIEW

◼ We review a district court's enforcement of a forum selection clause for an abuse of discretion. *Pelleport Investors v. Budco Quality Theatres,* 741 F.2d 273, 280 n. 4 (9th Cir.1984) (basing its use of this standard on *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 7, 92 S.Ct. 1907, 1911, 32 L.Ed.2d 513 (1972) (abuse of discretion standard applicable to *forum non conveniens* determination) and on *Nebenzahl v. Credit Suisse,* 705 F.2d 1139, 1140 (9th Cir.1983) (same)).

## DISCUSSION

◼ Federal law governs the validity of a forum selection clause. *Manetti-Far-*

row, *Inc. v. Gucci America, Inc.,* 858 F.2d 509, 514 n. 5 (9th Cir.1988). In *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972), the Supreme Court held that forum selection clauses are *prima facie* valid and should not be set aside unless the party challenging one can "clearly show that enforcement would be unreasonable and unjust...." 407 U.S. at 10, 15, 92 S.Ct. at 1913, 1916. TAAG argues that enforcement of this clause is unreasonable because (1) Swiss law does not permit causes of action for conspiracy, conversion, fraud, or racketeering, or allow awards of punitive or treble damages or the establishment of a constructive trust, (2) Swiss law might not allow any cause of action against those who did not sign the contract, i.e., Transamerica Corporation and the individual defendants, and (3) neither TAAG, Transamerica Corporation nor the individual defendants agreed to the forum selection clause.[1] Since the Swiss courts have announced that they will in fact accept jurisdiction of TAAG's claim, TAAG's assertions to the contrary are now moot.

I.  Possible Lack of Causes of Action and Remedies in Swiss Courts

In support of this first claim, TAAG argues that Swiss law will not allow it to proceed on some of the theories of recovery that would be available to it under American law, or to seek a measure of damages that would be available to it under American law. According to certain Swiss attorneys consulted by TAAG, Swiss law does not allow causes of action for conspiracy, conversion, fraud, racketeering or constructive trust; similarly, treble and punitive damages are contrary to the public policy of Switzerland. TAAG claims that without these causes of action and punitive damages it unreasonably could not be made whole. Because these contentions were first presented to the district court in sup-

---

1. TAAG also made two other arguments to the district court: (1) its RICO, conversion, conspiracy and equitable claims do not "aris[e] out of this Agreement or the execution or performance thereof" and therefore are not subject to the forum selection clause, and (2) federal policy

requires that RICO claims be brought in federal court. Since these arguments were not raised in TAAG's opening brief, they have been abandoned on appeal. *See Preservation Coalition, Inc. v. Pierce,* 667 F.2d 851, 862 (9th Cir.1982).

port of a Rule 60(b) motion filed after TAAG's notice of appeal and from the denial of which TAAG did not appeal, appellees now argue that these contentions and the evidence to support them are not before this court.

■■■ Rule 60(b) motions are separately appealable. *Plotkin v. Pacific Tel. & Tel. Co.*, 688 F.2d 1291, 1292 (9th Cir.1982). Thus, where a 60(b) motion is filed subsequent to the notice of appeal and considered by the district court after a limited remand, an appeal specifically from the ruling on the motion must be taken if the issues raised in that motion are to be considered by the Court of Appeals. *See Ingraham v. United States*, 808 F.2d 1075, 1080 (5th Cir.1987). Since TAAG did not appeal the denial of its October 1988 Rule 60(b) motion, it may not now raise these Swiss law arguments.

## II. Possible Inability to Sue Some Defendants in Swiss Courts

TAAG also claims that the Swiss courts could and probably would refuse to hear any action against Transamerica Corporation or the individual defendants, none of whom signed the agreement. Since this claim too was first raised in the Rule 60(b) motion, TAAG has similarly failed to appeal and may not now make this argument.

## III. TAAG and Some Defendants Were Not Parties to the Agreement

■■■ TAAG also attacks the reasonableness of enforcement by arguing that the forum selection clause was not "freely negotiated" because neither TAAG, Transamerica Corporation, nor the individual defendants signed the agreement. Regarding TAAG, it is well-settled contract law that the scope of a third-party beneficiary's rights is defined by the contract. 4 Corbin on Contracts § 819, at 277 (1951). The Third Circuit has held that a forum selection clause can restrict a third-party beneficiary to the designated forum. *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.*, 709 F.2d 190, 204 (3rd Cir.1983), *cert. denied*, 464 U.S. 938, 104 S.Ct. 349, 78 L.Ed.2d 315 (1983). We also so hold.

■■■ As for Transamerica Corporation and the individual defendants, they do not object to being governed by the forum selection clause, and they have all agreed to submit to the jurisdiction of the Swiss courts. It is not unreasonable or unjust to enforce the clause even though some of them did not sign the agreement. *See Coastal Steel*, 709 F.2d at 203 (because all defendants agreed to jurisdiction in the selected forum, the fact that one had not signed the contract was no basis for denying enforcement of the clause). *See also Manetti–Farrow, Inc.*, 858 F.2d at 514 n. 5 ("a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses" (quoting *Clinton v. Janger*, 583 F.Supp. 284, 290 (N.D.Ill.1984))).

In support of its theory that the forum provision was not freely bargained for, TAAG cites *Shute v. Carnival Cruise Lines*, 897 F.2d 377 (9th Cir.1990), *cert. granted*, 498 U.S. ——, 111 S.Ct. 39, 112 L.Ed.2d 16 (1990). That case involved a Panamanian corporation which sought to enforce a forum selection clause against passengers from the state of Washington. The clause, set forth in the cruise tickets, required litigation to be brought in Florida. The court refused to enforce this provision, citing inequality of bargaining power, great inconvenience to the plaintiffs and witnesses, and evidence that the Shutes were physically and financially incapable of litigating in Florida. *Shute, .897* F.2d at 388–89. To enforce the cruise-ticket clause would be effectively to deprive the Shutes of their day in court. *Id.* at 389. In contrast, TAAG, the national airline of Angola, has failed to present any evidence that it is incapable of pursuing its claims in Swiss courts. In fact, it appears to be currently in the process of doing so.

## CONCLUSION

The Supreme Court has declared that "[t]he expansion of American business and industry will hardly be encouraged if, notwithstanding solemn contracts, we insist on a parochial concept that all disputes must be resolved under our laws and in our courts." *The Bremen*, 407 U.S. at 9, 92 S.Ct. at 1912. In addition, the Court has stated that

[a] contractual provision specifying in advance the forum in which disputes shall be litigated and the law to be applied is ... an almost indispensable pre-condition to achievement of the orderliness and predictability essential to any international business transaction. Furthermore, such a provision obviates the danger that a dispute under the agreement might be submitted to a forum hostile to the interests of one of the parties or unfamiliar with the problem area involved.

*Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 516, 94 S.Ct. 2449, 2455, 41 L.Ed.2d 270 (1974).

TAAG has failed to rebut the presumption in favor of enforcing this forum selection clause because it has not demonstrated that "trial in the contractual forum will be so gravely difficult and inconvenient that [it] will for all practical purposes be deprived of [its] day in court." *The Bremen*, 407 U.S. at 18, 92 S.Ct. at 1917. There is also no evidence that "enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Id.* at 15, 92 S.Ct. at 1916. Therefore, the judgment of the district court is

AFFIRMED.