**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   CC-16-1002-KuKiTa |
| )  | |
| WILLIAM ROBERT NORRIE, ) | Bk. No.   2:13-bk-25751-BR |
| ) | |
| Debtor. ) | |
| _____ ) | |
| WILLIAM ROBERT NORRIE, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| MARK BLISS; JOHN M. PULOS; ) | |
| KELLY T. MALLEN, ) | |
| ) | |
| Appellees. ) | |
| _____ ) | |

Submitted Without Oral Argument
on September 22, 2016

Filed – October 26, 2016

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Barry Russell, Bankruptcy Judge, Presiding
_____

Appearances:   Appellant William Robert Norrie pro se on brief;
Paul R. Burns on brief for appellees.
_____

Before: KURTZ, KIRSCHER and TAYLOR, Bankruptcy Judges.

---

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

## INTRODUCTION

Over the course of several months, Chapter 7[1] debtor William Robert Norrie filed a counseled motion seeking relief from the bankruptcy court's contempt orders and four pro se motions also seeking relief from the contempt orders. Norrie appealed from some of the contempt orders, but that appeal was dismissed for lack of prosecution. The bankruptcy court denied all of the motions for relief from the contempt orders, but Norrie only appealed the denial of the fourth pro se motion.

Because the contempt orders and the denials of the first three pro se motions are all final and nonappealable, we lack jurisdiction to review in this appeal those arguments Norrie could have made or did make in the original contempt proceedings or in support of the first three pro se motions.

There is only one argument of Norrie's we can address. Norrie claims that the bankruptcy court should have granted his fourth pro se motion for relief on the ground that the contempt orders are void because he no longer can purge his contempt (and hence the contempt orders have become criminal and punitive in nature rather than coercive). However, in denying Norrie's fourth pro se motion, the bankruptcy court implicitly found that Norrie still had the ability to purge his contempt and that he had not done everything he could to purge his contempt.

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Local Rule" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California.

That finding was not clearly erroneous, so we AFFIRM.

**FACTS**

Most of the long and tortuous history of Norrie's bankruptcy case (and the seven other bankruptcy cases commenced by or against Norrie and his affiliated entities) is not directly relevant to this appeal. That history has been set forth in more detail in the memorandum decisions this panel has issued in Norrie's other appeals and in other court documents. See Norrie v. Mallen (In re Norrie), 2016 WL 4009979 (Mem. Dec.) (9th Cir. BAP July 21, 2016); Bliss v. Norrie (In re Norrie), 2016 WL 373868 (Mem. Dec.) (9th Cir. BAP Jan. 29, 2016).

In terms of general bankruptcy background, it suffices to say that Norrie commenced his current chapter 7 bankruptcy case in June 2013 and that the bankruptcy court entered a default judgment in July 2014 denying Norrie a discharge. The default judgment resulted from terminating sanctions the bankruptcy court imposed against Norrie based on his violation of discovery orders in the discharge objection adversary proceeding filed against Norrie.[2]

This appeal in large part concerns the court's orders seeking to compel Norrie to submit to examination and to produce documents under Rule 2004 and Norrie's failure to do so. The relevant train of events began when one of Norrie's creditors,

---

[2]The excerpts of record the parties provided omitted many relevant documents and transcripts. To overcome this impediment, we have reviewed the bankruptcy court's electronic case docket and its adversary proceeding dockets. We can and do take judicial notice of their contents and the imaged documents attached thereto. Heers v. Parsons (In re Heers), 529 B.R. 734, 738 n.3 (9th Cir. BAP 2015).

3

Mark Bliss, filed a motion in May 2014 for an order granting leave under Rule 2004 to examine Norrie and to request that Norrie produce documents responsive to Bliss' 88 categories of documents requested. According to Bliss, this discovery was necessary in order to help ascertain the true state of Norrie's assets, liabilities and financial condition.

Norrie filed an opposition to the motion, in which he argued that he was in the process of objecting to Bliss' claim and that Bliss should not be permitted to conduct discovery under Rule 2004 unless and until Norrie's claim objection was overruled. Norrie further asserted that Bliss' document requests related to the then-pending objection to discharge litigation brought by other creditors as well as to the chapter 7 trustee's fraudulent transfer litigation seeking to recover for the benefit of the estate a parcel of real property located in Venice Beach, California. In addition to these general objections, Norrie further raised specific objections to certain categories of document requests based on relevance, alleged improper purpose, and a claimed privilege of financial privacy.

After a hearing, the bankruptcy court entered an order on July 10, 2014, granting Bliss' Rule 2004 motion in its entirety. The Rule 2004 order required Norrie to produce the requested documents by July 17, 2014, and to appear for examination (deposition) on July 24, 2014.

When Norrie failed to comply with the Rule 2004 order, Bliss filed a motion for an order to show cause re contempt. According to Bliss, Norrie defied the Rule 2004 order by not attending his examination as directed and by not producing the requested

4

documents. Instead of producing the requested documents, Norrie's counsel resent responses to document production requests previously sought by the chapter 7 trustee, which Bliss maintained were not adequate or appropriate responses to his document requests.

In August 2014, the bankruptcy court entered the order to show cause re contempt as requested by Bliss. In response to the order to show cause, Norrie argued that the proposed contempt sanctions – which consisted of a proposed $17,350 attorney's fees award and a new order (again) requiring Norrie to appear for examination and produce documents by dates certain – were neither coercive nor compensatory in nature but rather were punitive and hence constituted an improper attempt by the bankruptcy court to impose criminal contempt sanctions.

In addition, Norrie argued: (1) that the Rule 2004 order was not specific and definite enough to be enforced; (2) that he was prepared to purge his contempt by arranging for a new examination date; (3) that Bliss should have initiated meet and confer proceedings before bringing his motion for contempt; (4) that he could not attend the examination as originally scheduled because his son was ill; and (5) that the order to show cause was improperly served.

After holding a hearing, the bankruptcy court entered an order on October 15, 2014 finding Norrie in contempt of the court's Rule 2004 order. To purge this contempt, the court directed Norrie to produce the documents Bliss requested by no later than October 17, to appear for examination (deposition) on October 24 and to pay $17,350 in attorney's fees to Bliss.

Norrie did not appeal the October 2014 contempt order, nor did he comply with the order's terms. Bliss then filed a new motion for an order to show cause re contempt. Bliss asserted that Norrie had willfully refused to comply with both the bankruptcy court's July 2014 Rule 2004 order and the court's October 2014 contempt order, and, consequently, Bliss requested that the court again find Norrie in contempt. Bliss further requested roughly $15,000 in additional compensatory sanctions and that the court order Norrie remanded into the custody of the U.S. Marshal's service until he purged his contempt by producing all documents requested and by appearing for and answering all questions asked of him at his Rule 2004 examination.

By way of response, Norrie, through new counsel, reiterated his claim that Bliss was not really his creditor but, nonetheless, proposed to purge his contempt by producing the requested documents on December 1, 2014, and by appearing for examination on December 5, 2014, or on any other date agreeable to both parties.

Bliss filed a reply in which he, in essence, asserted that Norrie's promise to purge his contempt and proposal for complying with his discovery obligations under Rule 2004 were not credible in light of the prior conduct of Norrie and his counsel.

On December 2, 2014, the bankruptcy court issued the order to show cause re contempt as requested by Bliss, and set a hearing date of February 3, 2015. The court's order specifically required Norrie to appear at this hearing.

Meanwhile, a different creditor – Kelly Mallen – sought and obtained a separate order to show cause re contempt against

6

Norrie.[3]  According to Mallen, the bankruptcy court had ordered Norrie to reimburse Mallen $7,525.00 on account of attorney's fees he had incurred in obtaining an order expunging a lis pendens, which Norrie had recorded against real property on Pacific Avenue in Manhattan Beach, California.  Mallen claimed that Norrie had willfully violated the bankruptcy court's sanctions order by not paying the attorney's fees award.  He further claimed that he should be awarded another $7,875 in attorney's fees incurred in bringing the motion for the order to show cause and that the court should order Norrie remanded into custody until Norrie purged his contempt by paying his attorney's fees in the aggregate amount of $15,400.  Mallen alleged that Norrie was financially capable of paying the attorney's fees but had chosen instead to ignore the court's prior sanctions order. Mallen supported this allegation by pointing to the amounts Norrie had stipulated to pay to his ex-wife in child support and spousal support and to the amounts Norrie had expended in litigating against Mallen and others.

In response, Norrie denied Mallen's allegation regarding his financial ability to satisfy the sanctions award.  Norrie further asserted that a finding of contempt should not be made for what amounted to a failure to satisfy a money judgment.  As Norrie pointed out, the ordinary consequence for nonpayment of a

_____

[3]Sometimes, the papers filed on behalf Mallen indicated that another creditor, John Pulos, was participating jointly in the Mallen initiated contempt proceedings.  At other times, the papers indicated that Mallen was acting alone.  Whether Mallen was acting alone or in concert with Pulos does not alter our analysis or our resolution of this appeal, and we only refer to Mallen herein for ease of reference.

7

judgment debt is enforcement of the judgment by writ of execution and other judgment enforcement remedies.

The bankruptcy court set the Mallen initiated contempt proceedings for hearing on the same date as the hearing on the Bliss initiated contempt proceedings – February 3, 2015. The court's order explicitly required the attendance of both Norrie and his counsel at the hearing.

Norrie filed responses to both orders to show cause. Norrie claimed that the contempt sanctions sought were punitive in nature, rather than coercive or compensatory. With respect to the Mallen initiated contempt proceedings, Norrie reiterated his contention that a finding of contempt should not flow from what amounted to nonpayment of a money judgment.

At the February 3, 2015, hearing on both orders to show cause, the court noted that Norrie had failed to appear as ordered and that his failure to appear was cause for issuance of an arrest warrant in and of itself. Norrie's counsel of record, who did appear, argued that he and Norrie thought that his counsel's appearance would be sufficient regardless of what the order said. But the court rejected that argument based on the order's plain language.

With respect to the Mallen initiated contempt proceedings, the court held that the monetary sanctions requested were meant to compensate Mallen for attorney's fees incurred and, hence, qualified as civil contempt sanctions. On the other hand, the court explained, regardless of whether nonpayment of the prior sanctions award was akin to nonpayment of a money judgment, the court would not incarcerate Norrie based on his failure to pay.

8

As for the Bliss initiated contempt proceedings, the court indicated that, if Norrie had appeared at the hearing as ordered, it merely would have ordered him (again) to comply with the Rule 2004 discovery order and the October 2014 contempt order. Even so, because Norrie failed to appear for the hearing, the court stated that it was prepared to order Norrie incarcerated until he fully complied with the Rule 2004 discovery requests.

After the hearing, the court issued three orders. The first order held Norrie in contempt for failing to pay Mallen the prior sanctions imposed and awarded Mallen additional attorney's fees in the aggregate amount of $15,400. The second order held Norrie in contempt for willfully failing to comply with Bliss' Rule 2004 discovery requests and awarded Bliss additional attorney's fees of $14,695. The third order provided for Norrie's arrest by federal marshals and for him to remain in custody until he fully complied with Bliss' Rule 2004 discovery requests.

Norrie filed an appeal from the February 2015 contempt orders, but that appeal was dismissed for failure to prosecute.

In March 2015, Norrie filed a motion effectively seeking to alter the terms of the February contempt orders to permit him an opportunity to purge his contempt without first being incarcerated. Norrie admitted that he left the country shortly before the February 3, 2015, contempt hearings but nonetheless contended that he was not a fugitive and did not flee the country in order to evade his required appearance. According to Norrie, he left the country only in order to be in England to address health issues involving his parents. Norrie also reiterated that, before the February 3 hearings occurred, he was under the

9

(mistaken) impression that his counsel's appearance would suffice. Additionally, Norrie proposed to purge his contempt, if the court permitted him to do so and if it rescinded the warrant for his arrest, by having his attorney forward to Bliss the documents requested and by appearing in the United States for his Rule 2004 examination on a mutually agreed upon date. Alternately, he proposed appearing in England in person, by video or by telephone conference. According to Norrie, the contempt orders as currently worded were punitive and criminal in nature because they unnecessarily required his incarceration before he could carry out his latest promise to comply.

In response, Bliss and Mallen pointed out that no documents had yet been produced as ordered by the court, even though Norrie had the capability of complying with the document requests through his counsel of record. They also pointed out that Norrie had promised on a number of prior occasions that he would comply with the Rule 2004 discovery requests but had not done so. As an alternative to Norrie's proposal for purging his contempt without incarceration, Bliss and Mallen suggested that Norrie should immediately turn over, without objection, all documents responsive to Bliss' document requests and that Norrie should return to the United States and voluntarily surrender to federal marshals. Bliss and Mallen further proposed expedited procedures for convening Norrie's Rule 2004 examination so that Norrie's time in custody could be minimized if he properly cooperated in the Rule 2004 examination process. In essence, Bliss and Mallen contended that withdrawing the coercive incarceration sanction before Norrie fully complied with the Rule 2004 discovery

10

requests would only encourage Norrie to continue his pattern of noncompliance with the bankruptcy court's orders.

At the hearing on Norrie's motion seeking to alter the terms of the bankruptcy court's February contempt orders, the bankruptcy court denied Norrie's motion without prejudice. The bankruptcy court specifically declined to modify its prior contempt orders so as to postpone or remove the provision for Norrie's arrest and incarceration. After carefully and thoughtfully considering the issue of Norrie's compliance, the court expressed the belief that, given Norrie's past conduct, Norrie would not comply with the Rule 2004 discovery requests – particularly the production of documents – in the absence of incarceration. On the other hand, the court expressed a willingness to revisit the issue of whether incarceration was necessary if Norrie fully complied with the document requests.

The bankruptcy court entered an order in April 2015 denying Norrie's motion to modify the terms of the February contempt orders. The order specified that Norrie could not set a hearing on a further motion of this type before he fully complied, without objection, to all of Bliss' 88 categories of document requests. The order also specified that "Debtor Norrie remains a disentitled fugitive, subject to arrest and remand to the Federal Marshal." Norrie did not appeal this order.[4]

---

[4]This was not the first time the bankruptcy court declared Norrie to be a disentitled fugitive. On March 12, 2015, the bankruptcy court entered an order denying Norrie's motion for sanctions against Mallen and his counsel Paul Burns because, as the court put it, Norrie had fled the country to evade the

(continued...)

11

Between August and December, 2015, Norrie filed, in pro per, four additional motions seeking to modify or vacate the February 2015 contempt orders and the bankruptcy court's April 2015 order stating that he was a disentitled fugitive and restricting him from seeking modification of the contempt orders without first fully complying with Bliss' 88 document requests.  The arguments in Norrie's August through December pro se motions are in large part duplicative of each other and also duplicative of the arguments he raised during the contempt proceedings.  For instance, Norrie repeatedly claims that neither Bliss nor Mallen are his creditors, that they are defrauding the court by claiming to be his creditors and that they should not be permitted to continue to seek discovery under Rule 2004 because they are not his creditors.  Norrie also argued that he does not meet the requirements under 28 U.S.C. § 2466 to qualify as a disentitled fugitive.

Norrie additionally renewed his argument that the contempt sanctions imposed – particularly the sanction providing for his incarceration – are criminal rather than civil in nature.  In his October and December, 2015, pro se motions, he sets forth new grounds for this argument.  In essence, Norrie claimed that he no longer had the funds to pay an attorney to collect and deliver the responsive documents to Bliss and that he has no one else to do this for him.  Consequently, Norrie explained, if he is

[4](...continued)
February 2015 contempt orders and that, under the fugitive disentitlement doctrine, Norrie's status as a fugitive precluded him from pursuing the sanctions motion against Mallen and Burns.

12

arrested the moment he returns to the United States, there is no way that he can produce the documents requested and, hence, no way he can purge his contempt – which renders the incarceration sanction punitive and criminal in nature. As Norrie put it: "Given the fact that 75% of the 88 categories [of documents requested] either cannot be produced prior to . . . arrest . . . or cannot be produced at all, it is physically impossible for Norrie to purge the contempt as the ruling currently stands." Motion for hearing to determine purging of contempt, etc. (Oct. 13, 2015) at p. 5 of 27; see also id. at 8 of 27.

No responses were filed to the first three of Norrie's pro se motions, and the court denied all three of these motions without holding a hearing. In its orders denying these motions, the bankruptcy court merely stated that Norrie had failed to demonstrate good cause in support of the motions.

In December 2015, Mallen and Bliss filed a joint opposition to Norrie's fourth pro se motion. According to Mallen and Bliss, Norrie's fourth pro se motion did not offer any legitimate explanation why, after roughly 17 months of being under court order to produce documents, Norrie had not produced a single document responsive to Bliss' 88 document requests. Mallen and Bliss further asserted that their counsel remained ready, willing and able to receive any documents Norrie produced in response to Bliss' document requests, and counsel pledged to promptly report to the court the status of any such production, in accordance with the bankruptcy court's April 2015 order on Norrie's first (counseled) motion seeking to modify the February contempt orders.

13

On December 18, 2015, the bankruptcy court entered an order denying Norrie's fourth pro se motion seeking to vacate or modify the court's February 2015 contempt orders and its April 2015 order. Norrie timely appealed the December 18, 2015 order.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A). To the extent we have jurisdiction over this appeal, that jurisdiction arises under 28 U.S.C. § 158.

## ISSUES

1. What is the permissible scope of this appeal?
2. Does the bankruptcy court's incarceration sanction qualify as a criminal contempt sanction or a civil contempt sanction?

## STANDARDS OF REVIEW

The issue regarding the permissible scope of this appeal requires us to examine our jurisdiction, which we review de novo. See Wolkowitz v. Beverly (In re Beverly), 374 B.R. 221, 230 (9th Cir. BAP 2007), aff'd in part & dismissed in part, 551 F.3d 1092 (9th Cir. 2008).

The issue regarding whether the bankruptcy court's incarceration sanction qualifies as civil or criminal hinges on the correctness of the bankruptcy court's determination that Norrie has the ability to purge his contempt by producing the documents requested. That determination was a finding of fact, which we review under the clearly erroneous standard. SEC v. Elmas Trading Corp., 824 F.2d 732, 732-33 (9th Cir. 1987).

A factual finding is not clearly erroneous unless it is illogical, implausible, or without support in the record. Retz

14

v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010).

**DISCUSSION**

Before we conduct any review of the bankruptcy court's December 18, 2015 order denying Norrie's fourth pro se motion, we first must ascertain what effect – if any – Norrie's failure to file (or perfect) appeals from the court's other contempt-related orders has on our jurisdiction. We have an independent duty to consider the extent of our jurisdiction even when the parties have not raised the issue. See Couch v. Telescope, Inc., 611 F.3d 629, 632 (9th Cir. 2010).

Norrie stated in his fourth pro se motion that the motion was procedurally based on Civil Rule 60(b), which is made applicable in bankruptcy contested matters by Rule 9024. How (and whether) we address the denial of Norrie's Civil Rule 60(b) motion depends in part on whether the bankruptcy court's February 2015 contempt orders were final orders. If they were not final, the bankruptcy court's denial of relief under Civil Rule 60(b) was appropriate for the simple reason that Civil Rule 60(b), on its face, only applies to **final** judgments and orders.

In any event, we hold that the bankruptcy court's contempt orders do qualify as final orders. In order to explain how we reach this holding, we must describe the difference between criminal and civil contempt sanctions – particularly in the bankruptcy context.

As first decided by the Ninth Circuit Court of Appeals in Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1192-95 (9th Cir. 2003), bankruptcy courts have no authority to impose significant criminal contempt sanctions; under § 105(a), they

15

only may impose civil contempt sanctions. Dyer also described the difference between compensatory civil contempt sanctions and criminal contempt fines:

> Civil penalties must either be compensatory or designed to coerce compliance. In contrast, a flat unconditional fine totaling even as little as $50 could be criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance, and the fine is not compensatory. This is so regardless of whether the non-compensatory fine is payable to the court or to the complainant. Whether the fine is payable to the complainant may, however, be one relevant factor in determining whether the fine is compensatory or punitive.

In re Dyer, 322 F.3d at 1192 (citations and internal quotation marks omitted). On this record, the attorney's fees awards that the bankruptcy court granted all qualify as compensatory civil contempt sanctions. The bankruptcy court repeatedly stated in its rulings that the monetary sanctions it was awarding were meant to compensate Bliss and Mallen for the attorney's fees they incurred in enforcing the bankruptcy court's orders.

As for the incarceration sanction, incarceration can be a civil contempt sanction, but only if the contemnor can purge the contempt and thereby free himself from custody by complying with the court's orders. In other words, a "civil contemnor 'carries the keys of his prison in his own pocket' because civil contempt is 'intended to be remedial by coercing the defendant to do what he had refused to do.'" Lasar v. Ford Motor Co., 399 F.3d 1101, 1110 (9th Cir. 2005) (quoting Gompers v. Buck's Stove & Range Co., 221 U.S. 418, 442 (1911)); see also United States v. United Mine Workers of Am., 330 U.S. 258, 303-04 (1947) (holding that civil contempt sanctions only may be imposed for two purposes: either to coerce compliance or to compensate the other side for

16

losses sustained as a result of the contempt).

Here, the bankruptcy court imposed the incarceration sanction as a civil contempt sanction. The patent purpose of the sanction was to coerce Norrie to comply with Bliss' Rule 2004 discovery requests, and the February 2015 contempt orders contained a provision indicating that the incarceration only would last until Norrie purged himself of the contempt by complying with the Rule 2004 discovery requests. Because the contempt orders afforded Norrie with the means to prevent or limit his incarceration, the incarceration sanction imposed against Norrie was civil in nature. See United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 828 (1994).

Civil contempt orders typically are considered interlocutory – not final – until the conclusion of the underlying litigation. Elmas Trading Corp., 824 F.2d at 732. In the bankruptcy context, however, when a civil contempt order is entered as a stand-alone matter and not as part of another pending adversary proceeding or contested matter, then the contempt order ordinarily is treated as final upon entry. Stasz v. Gonzalez (In re Stasz), 387 B.R. 271, 276 (9th Cir. BAP 2008). Stasz explained that a civil contempt order entered as a stand-alone matter in a bankruptcy case needed to be considered final and immediately appealable upon entry because there was no other clear time at which such a contempt order could or would become final. Id.

Here, as in Stasz, the debtor violated orders requiring examination and the production of documents pursuant to Rule 2004. Id. at 273-74. By its very nature, discovery conducted under Rule 2004 is a stand-alone matter. See

17

In re Dinubilo, 177 B.R. 932, 943 (E.D. Cal. 1993); Clark v. Farris-Ellison (In re Farris-Ellison), 2015 WL 5306600, at *3 (Bankr. C.D. Cal. Sept. 10, 2015). Accordingly, we consider the contempt orders entered against Norrie to enforce the bankruptcy court's Rule 2004 order to have been final and immediately appealable.

Having concluded that the contempt orders were final, we next consider the scope of our appellate review. Norrie filed this appeal after the denial of his **fourth** pro se motion seeking to modify or set aside the February 2015 contempt orders and the April 2015 order denying Norrie's counseled motion to modify the contempt orders. Norrie's appeal from the February 2015 contempt orders was dismissed for lack of prosecution, and Norrie did not appeal the April 2015 order. Nor did he appeal any of the orders denying his first three pro se motions.

Because the contempt orders and the orders denying the first three pro se motions are all now final and nonappealable, Norrie's attempt to argue in this appeal matters that were or should have been raised in the original contempt proceedings or in support of his first three pro se motions constitutes an impermissible collateral attack on the prior, final orders. See Valley Nat'l Bank of Ariz. v. Needler (In re Grantham Bros.), 922 F.2d 1438, 1442 (9th Cir. 1991) (rejecting as frivolous appellant's attempted collateral attack of bankruptcy court's final, non-appealable sale order); Alakozai v. Citizens Equity First Credit Union (In re Alakozai), 499 B.R. 698, 704 (9th Cir. BAP 2013) ("A final order of a federal court may not be

18

collaterally attacked.").[5]

Put another way, the denials of the first three pro se motions all were separately appealable final post-judgment orders. See Jeff D. v. Kempthorne, 365 F.3d 844, 850 (9th Cir. 2004); TAAG Linhas Aereas de Angola v. Transamerica Airlines, Inc., 915 F.2d 1351, 1354 (9th Cir. 1990). Norries' failure to timely appeal those orders deprives this Panel of jurisdiction to review those denials and the issues addressed therein. A timely filed notice of appeal is mandatory and jurisdictional. Browder v. Dir., Dep't of Corr., 434 U.S. 257, 264 (1978); Slimick v. Silva (In re Slimick), 928 F.2d 304, 306 (9th Cir. 1990). Slimick is particularly instructive. In Slimick, the bankruptcy court entered an order sustaining the bankruptcy trustee's exemption claim objection. Id. at 305. After the time for filing an appeal from that order had run, the Slimicks filed a motion requesting that the bankruptcy court enter written findings of fact and conclusions of law. Id. Several months later, the bankruptcy court entered written findings and conclusions and also entered a judgment disallowing the Slimicks' exemption claim. Id. at 305-06. The Slimicks timely appealed the subsequent judgment but not the prior order. Id. On appeal, the Ninth Circuit held that the Slimicks' appeal was untimely and that the entry of the subsequent judgment did not "constitute a second final disposition" that would start over the appeal

---

[5]In light of our conclusion that the contempt order and the orders denying the first 3 pro se motions are final and nonappealable, we need not address the impact, if any, of the order denying the counseled motion in this appeal.

19

period, nor did it extend the original appeal period, which ran when the bankruptcy court entered its original order disallowing the exemption claim. Id. at 306-07.

Here, Norrie could not extend the time to appeal the contempt orders or the orders denying his first three pro se motions by filing and obtaining a ruling on his fourth pro se motion. To hold otherwise would undermine the mandatory and jurisdictional nature of the appeal filing deadline. Thus, the issues raised and determined by the bankruptcy court's contempt orders and its denial of Norrie's first three pro se motions are beyond the permissible scope of this appeal.

Our holding regarding the limited permissible scope of this appeal is consistent with United States v. Wheeler, 952 F.2d 326, 327 (9th Cir. 1991). The Wheeler court held that the denial of a motion seeking to vacate a contempt order is "nonappealable" when the motion to vacate is premised on grounds that existed at the time of entry of the contempt order and the contemnor did not timely appeal the contempt order. As Wheeler explained, to hold otherwise would enable the contemnor to indefinitely extend the appeal period as to issues that could have and should have been addressed in the original contempt proceedings or in an appeal following the contempt proceedings. Id.

In sum, to the extent Norrie did raise or could have raised his arguments against the contempt orders in the initial contempt proceedings or in support of his first three pro se motions, we cannot address those arguments in this appeal from the denial of his fourth pro se motion.

Many of Norrie's pro se arguments should have been asserted,

20

if at all, in response to the original contempt motion. For example, in his third and fourth pro se motions, Norrie goes through the 88 categories of documents set forth in the original document requests and asserts that documents responsive to 26 of the categories requested do not exist, documents responsive to 9 of the categories requested are not within his possession or control, documents responsive to 28 of the categories requested might be in storage in Los Angeles, documents responsive to 2 of the categories requested should not have to be produced because the requests are subject to "legitimate objection" and documents responsive to 23 of the categories requested are not subject to any impediment that would prevent Norrie from producing them – even though he has not actually produced them.

Even if we were to assume that Norrie's assertions regarding the document categories are truthful and accurate, and even if we were to assume that these assertions partly mitigate the bankruptcy court's contempt finding (which they do not), it simply is much too little – and much too late – an effort on Norrie's part to comply with the bankruptcy court's original order requiring Norrie to produce documents. Nothing in our review of the entire record indicates why Norrie could not have provided this same information (and produced whatever documents were available to him) years ago – at the time the bankruptcy court entered its original Rule 2004 order – or at any time thereafter.

In any event, for purposes of this appeal, we cannot consider Norrie's assertions addressing the individual categories of documents he was directed to produce because that issue (and

21

virtually all of the other issues set forth in his fourth pro se motion) are beyond the permissible scope of this appeal. As we explained above, we lack jurisdiction over these issues because Norrie did not file (or perfect) appeals from the contempt orders or from the orders denying Norrie's first three pro se motions.

We only can address the merits of one argument raised by Norrie on appeal. Norrie contends on appeal that the bankruptcy court erred by not granting his fourth pro se motion because there is no longer any way for Norrie to purge his contempt. According to Norrie, even if the incarceration sanction originally was intended to be coercive rather than punitive, his inability to purge the contempt by producing all of the documents requested caused the incarceration sanction to change into a purely punitive criminal contempt sanction. Norrie correctly points out that civil contempt sanctions providing for incarceration can become criminal in nature when the contemnor no longer has the ability to purge the contempt. See Elmas Trading Corp., 824 F.2d at 732-33. Norrie additionally points out that bankruptcy courts do not have authority to impose criminal contempt sanctions. See In re Dyer, 322 F.3d at 1192-95.

For purposes of this appeal, we will assume without deciding that bankruptcy court issuance of a coercive civil contempt sanction that later becomes criminal (because it no longer can be purged) is a jurisdictional defect and is the type of jurisdictional defect that could render the court's contempt order void. But see United Student Aid Funds, Inc. v. Espinosa, 559 U.S. 260, 271-72 (2010) (indicating that a jurisdictional defect only is sufficient to justify Civil Rule 60(b)(4) relief

22

from a void judgment in "the exceptional case in which the court that rendered judgment lacked even an 'arguable basis' for jurisdiction.").

Even if we make these assumptions, Norrie's argument does not justify reversal of the bankruptcy court's denial of Norrie's fourth pro se motion. In denying Norrie's fourth pro se motion, the bankruptcy court did not explicitly find that Norrie still had the ability to produce the requested documents and purge his contempt, but that finding is implicit based on the entirety of the record and on the comments the bankruptcy court made at the time of the hearing on Norrie's first (counseled) motion seeking to modify the contempt orders. At that time, after thoughtfully considering Norrie's contentions, the bankruptcy court stated that Norrie had "virtually zero" credibility on the Rule 2004 order compliance issue. The bankruptcy court indicated that Norrie only could recover some amount of credibility by actually producing some of the requested documents. The bankruptcy court further indicated that it might be willing to revisit the issue regarding the purge provision of the contempt orders once Norrie actually had produced the documents as requested.

In support of his inability to purge argument, Norrie asserted in his appeal brief and in his fourth pro se motion that he cannot gather together and produce **some** of the documents requested while in England and that, if he returns to the United States, he immediately will be taken into custody, which also will prevent him from gathering together and producing **some** of the documents. Norrie also asserted that documents responsive to **some** of the document requests do not exist and that others are

23

not within his possession or control. Notwithstanding Norrie's assertions, the alleged state of affairs regarding Norrie's efforts and ability to purge his contempt did not change drastically from the time of his first (counseled) motion seeking to modify the contempt orders to the time of Norrie's fourth pro se motion. More importantly, nothing had changed to increase Norrie's credibility regarding the extent of his efforts to comply with the document requests.

Under these circumstances, we are not persuaded that the bankruptcy court's implicit finding – that Norrie still had the ability to purge his contempt at the time of the denial of Norrie's fourth pro se motion – was clearly erroneous.

**CONCLUSION**

For the reasons set forth above, we AFFIRM the bankruptcy court's order denying Norrie's fourth pro se motion.